FILED & JUDGMENT ENTERED
Steven T. Salata

Apr 04 2014

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
J. Craig Whitley
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| GENIEROSE DIOLA MAGSINO | ) | Case No. 12-31997 |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| GENIEROSE DIOLA MAGSINO | ) | |
| | ) | |
| Plaintiff, | ) | Adversary Proceeding |
| | ) | No. 12-3247 |
| v. | ) | |
| | ) | |
| UNITED STATES DEPARTMENT | ) | |
| OF EDUCATION | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER GRANTING DEFENDANT'S MOTION FOR
## SUMMARY JUDGMENT

**THIS MATTER** came before the Court on the Defendant's, the United States Department of Education, ("Dept. of Education") Motion for Summary Judgment, filed on September 6, 2013. The Plaintiff, Genierose Diola Magsino, ("Magsino") filed a response on November 4, 2013. A hearing was held on February 27, 2014. Magsino appeared on her own behalf and James Sullivan appeared on behalf of the Dept. of

1

Education. At hearing, the Court took the Motion under advisement and directed Magsino to file an additional response, which was filed on March 13, 2014.

Based on the following, the Court **GRANTS** the Defendant's Motion for Summary Judgment.

**FACTS**

Magsino filed a no-asset Chapter 7 petition on August 20, 2012. She received her discharge on December 3, 2012. On November 5, 2012, the Debtor filed an adversary proceeding against the Dept. of Education seeking a discharge of her student loan obligations pursuant to 11 U.S.C. §523(a)(8).

Magsino was sixty-one (61) years old at the time she filed the Complaint in the Adversary Proceeding. As of November 1, 2012, her federal student loan balance was $35,725.19. Prior to filing bankruptcy, she had been working four part-time jobs seasonally, and she said her total gross earned income was $9,556.97 in 2011.

In 2004, at age fifty-three (53), Magsino graduated from Rutgers University with a Bachelor's Degree in accounting. She financed her education at Rutgers with scholarships from various entities, in addition to the loans that she took out. As shown on her resume, Magsino has had experience working in accounting, both prior to and subsequent to her graduation from Rutgers. She had received a Bachelor's Degree in commerce from a college in the Philippines, where she had studied for six years. Later, but prior to attendance at Rutgers, she had attended Union College in New Jersey, a two-year school.

Prior to her studies at Rutgers University, Magsino had purchased a condominium. She sold the condo in 2004 and that sale produced a $143,000 gross profit

2

inclusive of closing costs. Magsino acknowledged that she netted in excess of $100,000 from the transaction. With more than $100,000 of available cash following the sale, Magsino paid off her New Jersey state loans in full because her brother had guaranteed those loans. She also paid a Perkins loan in the amount of $1,500. She made no payment on her Direct Loans.

Thereafter, Magsino moved to North Carolina thinking that the cost of living was not as high as in New Jersey. She acknowledged that when she moved to North Carolina, she had about $100,000 in cash. In 2005, she bought a townhome in Charlotte. When she sold it, she profited about $20,000. Then, on Nov. 13, 2006, Magsino made one payment to Direct Loans in the amt. of $2,500. She made no further payments in the ensuing seven years.

For a number of years through 2012, Magsino requested and obtained unemployment deferments regarding her federal student loans. During the time of Magsino's unemployment deferment requests, she was studying for and took the CPA exam. She took two of the four parts of the CPA exam and came close to passing.

On October 12, 2012, Magsino was notified that she had exhausted her thirty-six (36) months of unemployment deferment, and she was invited to contact the Dept. of Education's Direct Loans program to discuss other payment options, such as the income contingent repayment plan ("ICRP"). Four months later, by letter dated February 15, 2013, the Dept. of Education's Direct Loans program informed Magsino that she was eligible for alternative repayment plans whereby her monthly payments would be $0 and at the end of a 25-year repayment period, any remaining balance on her student loans would be forgiven. The letter also notified Magsino that the Dept. of Education intended

to offer to the Bankruptcy Court evidence of the repayment programs at trial of her adversary proceeding.  Magsino was notified that: "In deciding whether you meet the legal standard for a student loan discharge, the Bankruptcy Court will consider what efforts you have made to restructure the debt."

Even in the face of the letter's notice and the letter's three exhibits detailing the generous repayment plans, Magsino did not accept the Dept. of Education's offer; instead, she asked for release from her loans and insisted that she would press for complete discharge from her student loan obligations.  In her response to Interrogatory No. 18, Magsino asserted that ICRP does not give relief because of the uncertainties involved.  Her concerns appear to be about paying back the student loans in the event she has any substantial increase to her income and also about potential tax consequences of loan forgiveness at the end of the twenty-five year period.  She also believes that the repayment program subjects or enslaves her to involuntary servitude, which is unconstitutional under the Thirteenth Amendment of the U.S. Constitution.

From about mid-April - mid-May 2013, Magsino was working for Measurement, Inc., more than part-time, as much as seventy hours a week.  Then in late May 2014, a different project for Measurement, Inc. had her working about twenty-four hours a week, and she also had a day project at a different job.  Her two jobs ended around June 22-23, 2013 and it had been sometimes sixteen hours a day of work.  At her deposition, Magsino treated as irrelevant the question of whether she anticipated being able to work as a team leader at Measurement, Inc., anytime in the next couple of years.  Being trilingual – English, Spanish and Tagalog -- has been an advantage in Magsino's employment.

4

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), made applicable in the bankruptcy setting by Bankruptcy Rule 7056, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the court must construe the "facts and inferences drawn therefrom in the light most favorable to the non-moving party." *Seabulk Offshore, Ltd. v. Am. Home Assurance Co.*, 377 F.3d 408, 418 (4th Cir. 2004) (*citing Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001)).

A party seeking summary judgment bears the initial burden demonstrating the absence of a genuine issue of material fact as to a dispositive issue. *Coleman v. U.S.*, 369 F. App'x 459, 461 (4th Cir. 2010) (*citing Celotex*, 477 U.S. at 323). If the movant is able to establish a prima facie basis for summary judgment, "[t]he burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." *Id.* (*citing Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 718 (4th Cir.1991)). Furthermore, "the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show that there is a genuine issue for trial." *Id.* (*citing Baber v. Hosp. Corp. of Am.,* 977 F.2d 872, 875 (4th Cir.1992)). "The nonmoving party may not rely on beliefs, conjecture, speculation, or conclusory

5

allegations to defeat a motion for summary judgment." *Id.*

## DISCUSSION

**I.    Plaintiff has not met the Standards for Dischargeability of Student Loan Obligations Under 11 U.S.C. §523 (a)(8).**

Student loan obligations are ordinarily not dischargeable in bankruptcy unless the debtor would suffer an undue hardship if forced to repay the loan. *See* 11 U.S.C. §523(a)(8). "Undue hardship" is not defined in the Bankruptcy Code. The Fourth Circuit Court of Appeals adopted the three-part test established in *Brunner v. New York State Higher Educ. Servs. Corp,* 831 F.2d 395, 396 (2d Cir. 1987) (per curiam). *See In re Ekenasi*, 325 F.3d 541, 546 (4th Cir. 2003); *Educ. Credit Mgmt. Corp. v. Frushour (In re Frushour),* 433 F.3d 393, 400 (4th Cir. 2005).

In order to prove an undue hardship, the *Brunner* test requires Magsino to demonstrate: (1) that she cannot maintain, based on her current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans (2) that additional circumstances indicate that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans, and (3) that she has made good faith efforts to repay the loans. *See In re Frushour*, 433 F.3d at 400 (*citing In re Brunner*, 831 F.2d at 396).

A debtor seeking a discharge of student loans bears the burden of proving all three factors by a preponderance of the evidence. *Id.* In enacting § 523(a)(8), Congress intended to make the discharge of student loans more difficult than that of other dischargeable debt. *Brunner*, 831 F.2d at 396. "This heightened standard protects the integrity of the student-loan program..." and "prevent[s] debtors from easily discharging

6

their debts at the expense of the taxpayers who made possible their educations." *In re Frushour*, 433 F.3d at 400.

> **A. Magsino has not met her burden of showing that she cannot maintain, based on current income and expenses, a minimal standard of living for herself and her dependents if forced to repay the loans.**

Magsino attempted to demonstrate that she meets the first prong by showing that her standard of living for herself, a single adult with no dependents, is very low. This Court does not disagree. While her assertions in her Opposition to the Dept. of Education's Motion for Summary Judgment show a very low standard of living, she did not analyze the effect on her "*if forced to repay the student loans.*" (emphasis added). Magsino asserts that participation in the Income Contingent Repayment Plan ("ICRP") does not prevent satisfaction of the *Brunner* test *per se*. However, one cannot ignore the fact that if Magsino participated in the ICRP, repayment of her consolidated student loan would have no effect whatsoever on her ability to maintain a minimal standard of living for herself. In other words, in light of her present circumstances, denying the discharge, with the zero monthly payment that would be prescribed under ICRP, would not *cause* Magsino to be unable to maintain a minimal standard of living.

> **B. Magsino has not met her burden of showing that additional circumstances indicate that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans.**

This factor is the heart of the *Brunner* test. *In re Frushour,* 433 F.3d at 401. The debtor's hardship must be more than the normal hardship that accompanies any bankruptcy. *Id.* It is "a demanding requirement," *In re Brightful,* 267 F.3d 324, 328 (3d Cir. 2001), and necessitates that a "certainty of hopelessness" exists that the debtor will

not be able to repay the student loans. *In re Frushour*, 433 F.3d at 401. "[A] debtor might meet this test if [he or] she can prove 'illness, disability, a lack of usable job skills, or the existence of a large number of dependents.'" *Id.* (*quoting Oyler v. Educ. Credit Mgmt. Corp,* 297 F.3d 382, 386 (6th Cir. 2005). According to *Frushour*, "[o]nly a debtor with rare circumstances will satisfy this factor." *Id.*

Magsino relies primarily on her age as a reason she does not expect her employment prospects to improve. She argues that at her advanced age, prospective employers consider her for retirement, not employment. However, age alone is not an "additional circumstance" determining the second prong. *In re Spence*, 541 F.3d (4th Cir. 2008) (holding that a woman in her late 60s with a low-paying job did not satisfy the second prong of the *Brunner* test, where the evidence showed that she was a reliable, diligent worker with an extensive education). In a case out of the bankruptcy court of the Eastern District of North Carolina, *In re Ward*, a Debtor argued that he wouldn't be able to pay his loans in part due to the "reluctance of employers to hire job applicants who have been employed for a long period of time, are near or over the age of 50, or who have changed jobs frequently." No. H-12-00001-8-MP, 2013 WL 4136093, at *2 (Bankr. E.D.N.C. Aug. 9, 2013.) The Court held that "none of these factors constitute the type of 'additional circumstances' that would satisfy the second prong of the *Brunner test*, especially without evidence of significant medical issues." *Id.* at *5.[1] *See also In re Gibson*, 2012 Bankr. LEXIS 2745 (Bankr. D. Md. June 13, 2012) (holding that a

---

[1] In her opposition to the Dept. of Education's Motion for Summary Judgment, Magsino explains that she has medical and dental issues that require treatment that she has postponed. She cited to deteriorating eyesight, ankle pain, carpal tunnel syndrome, and dental problems. However, none of these issues rise to the level of "significant medical issues" that would preclude Magsino from working.

8

"certainty of hopelessness" did not exist where a 61-year-old debtor described herself as approaching the end of her working years). This Court agrees.

Magsino's circumstances are far from ideal, but given her college education, real estate license, and work experience, the court is not left with the likelihood that her present circumstances will extend for the rest of her repayment period or that she will not be able to pay off her loans at some future date. Her recitation of academic excellence and scholarship awards also show her to be a person of demonstrated ability and also suggests that when the economy improves, Magsino may be better employed than she is at present. She has extensive experience working in accounting and her degree from Rutgers University is in that field. Recently, she took two parts of the CPA exam and only narrowly missed passing. Her employment already has improved with the additional hours being worked in recent months and the prospects for more improvement increase with greater longevity at employers such as Measurement, Inc., and with a strengthening local economy.

> **C. Magsino has not met her burden of showing that she has made a good faith effort to repay her loans.**

Magsino claims to have proven good faith on the following grounds: (1) because she made one payment toward the student loan at issue; (2) because she paid off other student loans; (3) because she attempted to pass the CPA exam to obtain higher paying employment; (4) because she obtained a Real Estate License and purchased and sold a foreclosed townhome; (5) because she did not reaffirm a car payment; and (6) because she has delayed dental and medical treatments. While those claims are factually undisputed, those are not the only pertinent facts that must be considered in any analysis

9

of whether she has demonstrated a good faith effort to repay her student loan. Magsino has a heavy burden to meet the claim of a good faith effort to repay her loan.

Her 2004 payments of New Jersey class loans and Perkins loans do put her in a better light than if her only student loan repayment had been the single $2,500 payment she made in 2006 toward repayment of consolidated student loans, however, they do not show good faith. She acknowledged that in 2004 she chose not to apply any of the $100,000+ proceeds from her New Jersey condominium sale to paying off the Direct Loans. She chose only to pay off a small Perkins loan and her state education loans because her brother was guarantor on the state education loans. When the sale of real estate in Charlotte netted about $20,000 cash, Debtor made her only payment toward her federal Direct Loans and chose to make that a $2,500 payment. This does not show that Magsino takes paying back her Direct Loans seriously.

Magsino argues that her refusal and failure to participate in the Department of Education's ICRP or IBR is not evidence of bad faith and should not be held against her. While it is not *per se* evidence of bad faith, it is certainly a factor to consider. As another bankruptcy judge commented on similar facts which would have resulted in a prescribed student loan payment of zero, it is illogical to conclude that a payment of zero could be an undue hardship: "The debtor's justification in refusing the [Income Contingent Plan] loan repayment program is not that the monthly payments of zero would pose a hardship (which indeed it could not)…." *Robinson v. Educ. Credit Mgmt. Corp. (In re Robinson)*, 416 B.R. 275 (Bankr. E.D. Va. 2009). Magsino did not deny that she declined to participate in the ICRP or IBR, she simply argued that her refusal to participate should not be taken against her.

Magsino also pointed to the tax consequences of the ICRP as reason to grant her an undue hardship discharge. The possible future tax consequences of the ICRP are too speculative, however, to negate the otherwise obvious benefits of ICRP or IBR. The Eighth Circuit has commented as follows: "The mere possibility of tax consequences at the expiration of the 25-year period is not dispositive of the issue of whether the [ICRP] represents a viable avenue for repayment of student loan debt." *Nielsen v. ACS, Inc. (In re Nielsen)*, 473 B.R. 755, 762 (B.A.P. 8th Cir. 2012). In another opinion, the Eighth Circuit stated that "the court's reference to a 'potentially significant tax bill' when any unpaid balance is cancelled ignored the fact that cancellation results in taxable income only if the borrower has assets exceeding the amount of debt being cancelled." *Educ. Credit Mgmt. Corp. v Jesperson*, 571 F.3d 775, 782 (8th Cir. 2009) (citing 26 U.S.C. §108(a)(1)(B))). Bankruptcy Courts in this Circuit have followed that logic. *See, e.g., Burton v. Educ. Credit Mgmt. Corp. (In re Burton)*, 339 B.R. 856, 889 n.48 (Bankr. E.D. Va. 2006).

Finally, Magsino appears to argue against entry of summary judgment on the ground that the repayment programs would subject her to "involuntary servitude" to "oppression [sic] of debt" and that therefore, those repayment programs are unconstitutional for violating the Thirteenth Amendment's prohibition against slavery and involuntary servitude. She cites no case law in support of this position. Indeed, calling the repayment programs requiring zero repayment "involuntary servitude" reflects Magsino's confusion about the source of her current financial predicament. Her borrowing of loans in amounts not serviceable by future income created the financial burden, not the repayment programs that require zero repayment.

11

## CONCLUSION

The Debtor has not met the heavy burden required under the *Brunner* standards to establish undue hardship. Accordingly, the Department of Education's Motion for Summary Judgment is **GRANTED.** The Debtor's student loans are not dischargeable pursuant to § 523(a)(8).

**SO ORDERED**.

| | |
|---|---|
| This Order has been signed electronically. The Judge's signature and Court's seal appear at the top of the Order. | United States Bankruptcy Court |